**The GEORGIE PORGIE COMPANY et al., Plaintiffs,**

v.

**Ron LINK et al., Defendants.**

**71 Civ. 3029.**

United States District Court,
S. D. New York.

Aug. 18, 1971.

Leo Gitlin, New York City, for plaintiffs.

Rolland W. Dague, New York City, for defendants.

OPINION

COOPER, District Judge.

Plaintiffs, pursuant to 17 U.S.C. § 112, seek a preliminary injunction restraining defendants' imminent off-Broadway presentation of the play "Georgie Porgie, A Fairy Tale" alleging an infringement of their copyrighted dramatic work "Georgie Porgie." Grec Affidavit, July 8, 1971, p. 1; Birimisa Affidavit, July 15, 1971, p. 1.

---

The play "Georgia Porgie" authored by George Birimisa was publicly performed under the direction of Ron Link on four (4) occasions at the experimental Cubiculo theatre in March 1971. George Grec, the principal plaintiff, on June 23, 1971 entered into a contract with the playwright granting him an exclusive license to produce the play. Grec had previously secured an assignment from the Cubiculo of all future professional production rights it had obtained from Birimisa in return for staging "Georgie Porgie." Agreement attached to Bregman Affidavit, July 15, 1971. In this action, plaintiffs seek to enforce this exclusive right to produce the Birimisa play.

On July 13, 1971, the return date of the within motion, defendants filed woefully inadequate answering papers. Neither in the course of oral argument nor in their submitted papers did they request an opportunity to elaborate their position at an evidentiary hearing. Semmes Motor Inc. v. Ford Motor Co., 429 F.2d 1197, 1204 (2d Cir. 1970).

What happened thereafter was not in the least to this Court's liking. It was only this Court's prompting as reflected by a special conference convened at our request on July 16, 1971 when we instructed defendants to submit additional papers and scripts of their play, that led to the presentation of additional information approaching a legally comprehensible opposition. Acceding to a later date than we regarded appropriate, defendants were directed to submit this supplemental matter by July 20, 1971. About 2:30 o'clock on that day, defendants' attorney telephoned our chambers and requested a three (3) day extension. This we denied and repeated our direction that either the designated material be submitted by the close of the day or an affidavit filed explaining the cause of the delay. Defense counsel disregarded our instructions by submitting the additional matter, without explanation, at 5:30 P.M. on July 21, 1971.

Although defense counsel "affirmed" mail service of these documents to his adversary, on July 26, 1971 we received an affidavit of plaintiffs' counsel, since uncontroverted by defendants, that he never received those papers.

Defendants' failure to comply with our directions and their unilateral submission of papers to this Court could, independent of the merits of the motion, support our granting plaintiffs' application.

We are compelled to reach this same conclusion in any event upon a review of the papers before us. This disposition constitutes our findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ.P.

Defendants allege in defense of their right to stage their production that they "entered into a valid contract with" playwright Birimisa "to produce and present a proper production of a certain dramatic work" (i. e. the version of "Georgie Porgie" as revised by Ron Link). Dague Affidavit, July 21, 1971, p. 1. In determining this issue, for the purposes of this motion, we need not resolve any factual dispute as to what occurred at the various meetings attended by the individual litigants from April until June 1971, SEC v. Frank, 388 F.2d 486 (2d Cir. 1968), but only the resulting legal effects arising therefrom. Defendants' narration of the events, as set forth in detail in affidavits submitted July 21, 1971, even assuming an accurate recital of their understanding with Birimisa, does not evidence a firm contractual commitment; it reflects preliminary negotiations only. American Merchant Marine Ins. Co. v. Letton, 9 F.2d 799 (2d Cir. 1926). In fact, at their last amicable meeting prior to this litigation, defendants' alleged arrangement with Birimisa was not to undertake a joint venture but rather their staging of a separate production from that of plaintiffs. Bario affidavit, July 14, 1971, p. 3; Federbush affidavit, July 14, 1971, p. 3.

Additionally, defendants fail to set forth in sufficient specificity the terms of their purported agreement. Bario affidavit, p. 3; Federbush affidavit, p. 2.

V'soske v. Barwick, 404 F.2d 495 (2d Cir. 1968). Likewise, we are without any information as to the contemplated period of performance of the parties to this alleged agreement. Defendants' affidavits clearly reveal that Federbush, the "contracting party" on behalf of defendants, was looking towards the release of a film of the play after the stage production ended its run, an event most unlikely to occur within one (1) year. Accordingly, the alleged oral contract may well be defective as contravening New York General Obligations Law, § 5–701. Rayward v. Silberman, 356 F.2d 611 (2d Cir. 1966).

The second basis upon which defendants rely in opposing the instant application is that "the script being used by the defendants is a different script from that of the plaintiffs." This contention is belied by the facts that (1) defendants sought to copyright a virtually identical manuscript to that of plaintiffs; (2) the affidavit of Bruce Lovern, July 23, 1971, an actor engaged by defendants to appear in their production, recites the similarity between the two scripts; (3) defendants' own advertisements associating their play with that performed at the Cubiculo; and (4) the "working" script offered to this Court by Ron Link (now on defendants' side) on July 22, 1971 (neither submitted by defense counsel nor served upon his adversary) evidences an abrupt shift to a mimeographed, unrelated, "Mugger-Victim" situation and really undermines defendants' credibility.

Defendants' contention that the prior public performance of the Birimisa play placed the dramatic work in the public domain and extinguished any right to copyright the play, is without merit. The limited production of Georgie Porgie at the Cubiculo theatre was not an abandonment of the author's rights in the play. Nutt v. National Institute Inc., 31 F.2d 236 (2d Cir. 1929).

For the reasons set forth above, we conclude that plaintiffs have established the requisite probability of success at trial. Rice v. American Program Bu-

reau, 446 F.2d 685, 2d Cir., July 8, 1971. The irreparable harm that plaintiffs would otherwise suffer by the contemporaneous presentation of defendants' production is obvious. American Metropolitan Enterprises of New York, Inc. v. Warner Bros., 389 F.2d 903 (2d Cir. 1968). Accordingly, plaintiffs' motion is granted.

Settle order on three (3) days' notice.