H. Josef THYWISSEN, Appellant,

v.

FTI CORPORATION, Appellee.

No. 16401.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 9, 1975.

Rehearing Denied Feb. 13, 1975.

Childs, Fortenbach, Beck & Guyton, Michael R. Waller, Stephen R. Kirklin, Houston, for appellant.

John R. Cope, Robert L. Rouner, Houston (Bracewell & Patterson, Houston, of counsel), for appellee.

EVANS, Justice.

FTI Corporation brought this action against H. Josef Thywissen and others alleging itself to be a duly registered securities dealer and seeking to recover a "brokerage commission" in the amount of $67,000.00 which it alleged it had earned "in connection with" the purchase of all of the stock of Rector Oil Well Company by Thywissen and the other defendants. After nonsuit and dismissal as to the parties other than Thywissen, the case was submitted to the jury and judgment on the verdict entered in favor of FTI against Thywissen for the amount of its claimed commission.

Thywissen asserts here, as he did in the trial court, that FTI is precluded from recovering a commission on the sale of Rector since the company owned real estate interests and FTI failed to plead or prove compliance with either the licensing or written agreement requirements of the Real Estate Dealers Act, Article 6573a, Vernon's Tex.Rev.Civ.Stat.Ann., and also for the reason that the transaction involved the sale of the corporate stock of Rector and that FTI Corporation failed to prove compliance with the licensing requirements of the Texas Securities Act, Article 581–34, Tex.Rev.Civ.Stat.Ann.

Thywissen first went to FTI Corporation in 1970 to discuss investments. FTI was engaged in real estate development, the management of financial institutions and in arranging corporate financing. It also functioned as a business broker or finder in the sale and acquisition of business enterprises. During the months that followed their first meeting, Thywissen was presented by FTI with a number of investment possibilities but all were rejected. In May, 1971 FTI's representative, Frank M. Austin, Jr., contacted Thywissen and as a result of conversation in Austin's office, Thywissen was advised that Gearhart-Owen Industries owned Rector Oil Well Company and that it would cost Thywissen $750,000.00 to buy Rector. Thywissen was given financial data on Rector to study and on May 26, 1971 Thywissen made a trip to Fort Worth to look at Rector. He was met at the airport by another FTI representative, J. Bruce Barkley, who proceeded with Thywissen to the Rector offices where Thywissen discussed operational details and other matters with Rector's president. On this visit Thywissen ascertained from his discussion with Barkley that the sales price of Rector had been set by Gearhart-Owen Industries at $683,000.00 and that the purchase price of $750,000.00, given him by FTI, contained a "mark-up" for FTI's commission of

$67,000.00. Thywissen testified that he told Barkley that if FTI was making that much he, Thywissen, would expect FTI to do some leg work for him and that Barkley indicated a willingness to do so. There is evidence that Barkley and Austin did subsequently perform a certain amount of work in connection with the negotiations resulting in the consummation of the transaction and that they did everything which was asked of them.

On June 22, 1971 Thywissen again went to Fort Worth where he met with Mr. Marvin Gearhart, Chairman of the Board of Gearhart-Owen. As a result of prior communication between Thywissen and Gearhart, FTI's representatives, Barkley and Austin, were asked to wait outside Gearhart's office while Gearhart and Thywissen discussed the terms of the proposed sale of Rector. According to Thywissen's testimony, he told Gearhart that he had a $500,000.00 tentative loan commitment and that was all the money he could come up with and that Gearhart suggested that they could take some of the assets out of Rector and thereby reduce the sales price to a total sum of $620,000.00. As a result of this discussion and subsequent negotiations a sale of all of the stock of Rector was ultimately arranged and consummated for that price on or about July 30, 1971. Under their final arrangement, all of the outstanding shares of the capital stock of Rector was transferred to American Aero Industries, Inc. and by collateral agreement with Thywissen he was entitled to receive one-half of such stock upon conversion of a debenture from American Aero.

The jury found that Thywissen had entered into agreement with FTI prior to July 30, 1971 to pay the sum of $67,000.00 for services rendered and to be rendered by FTI in connection with the acquisition of Rector; that FTI had rendered services in connection with such acquisition; that Thywissen had benefited from such services; that FTI had reasonably notified Thywissen that in rendering such services it expected to be paid by him; and that the

reasonable value of the services rendered to Thywissen by FTI was in the amount of the sum agreed upon by them.

Article 6573a, Sec. 19, Tex.Rev.Civ.Stat. Ann., precludes a real estate broker from recovering a commission unless the broker alleges in his pleadings and proves by the evidence that he was a duly licensed real estate broker or salesman at the time his cause of action arose.

Article 6573a, Sec. 28, Tex.Rev.Civ.Stat. Ann., precludes recovery of commission for the sale or purchase of real estate unless the promise or agreement is evidenced by a writing signed or authorized by the party sought to be charged.

Article 581–34, Texas Securities Act, precludes recovery of a commission or compensation for services rendered in the sale or purchase of securities unless the party bringing the action alleges and proves that he was duly licensed under the provision of the Act.

In Hall v. Hard, 160 Tex. 565, 335 S.W. 2d 584 (1960), Hard sought to recover a commission from Hall, alleging that he had been employed to try to find a buyer for Hall's certificates, properties and other assets and that he was the procuring cause of the sale of Hall's properties. The jury found that Hall had agreed to pay the stipulated commission and that Hard was the procuring cause of the sale of the Hall Motor Freight properties. Hall filed motion for judgment notwithstanding the verdict, which the court sustained, urging as in the instant case that Hard had failed to plead and prove compliance with the licensing requirements of Article 6573a and Article 581–34. The court of civil appeals reversed the trial court's judgment and rendered judgment for the plaintiff. The Supreme Court of Texas reversed and remanded the case for further proceeding, holding that a fact issue was presented as to whether Hard's employment contract included the sale of real estate and securities and that the trial court having erroneously rendered judgment n. o. v., there could be

no presumed finding on such omitted issues in support of its judgment. It held that the burden was upon the plaintiff Hard to allege and prove that he did not come within the terms of Article 6573a and Article 581–34. On remand, the trial court found that the employment agreement between Hall and Hard did not contemplate nor include the sale of real estate or the sale of securities, and its judgment was affirmed and the Texas Supreme Court refused writ of error, finding no reversible error. D. C. Hall Transport, Inc., v. Hard, 355 S.W.2d 257 [Tex.Civ.App.—Fort Worth 1962, writ ref'd n. r. e., 163 Tex. 504, 358 S.W.2d 117 (1962)].

The financial statement of Rector furnished to Thywissen by FTI, and testimony in the record, show that Rector owned interests in real estate which comprised a portion of its assets. If the agreement found to exist between FTI and Thywissen contemplated the sale or purchase of the assets of Rector, the provisions of Article 6573a would be applicable to the transaction. Under such circumstances and the holding in Hall, the recovery of a Commission by FTI would be precluded since it did not plead or prove compliance with the licensing and writing requirements of that statute.

■ The acquisition of Thywissen's investment interest in Rector was ultimately accomplished through the sale of all of the capital stock of Rector. The fact that the sale was consummated upon the basis of transfer of stock, as distinguished from assets of the company, does not establish as a matter of law that FTI was engaged in the transaction as a securities broker. Taylor Communications, Inc. v. Harte-Hanks Newspapers, Inc., 447 S.W.2d 401 (Tex. 1969).

The essential question presented by the rationale of Hall, is whether the agreement found to exist between Thywissen and FTI contemplated the sale of real estate or securities.

■ FTI argues that when Thywissen first sought the services of FTI in 1970 their understanding did not involve a contract for a commission on the sale or purchase of real estate or securities but rather that Thywissen would pay a fee if FTI succeeded in finding and introducing Thywissen to an investment opportunity. Thywissen knew the nature of FTI's business and that in the event FTI assisted people in buying or selling a business it expected to receive a commission on the sale. However FTI's representative, Mr. Austin, admitted that prior to June 22, 1971 he didn't have an agreement from any person for his fee and that he was depending upon his "ability to peddle the company for more than $683,000.00." It was not until May, 1971 that FTI first offered Rector to Thywissen as an investment opportunity and the testimony was uncontroverted that FTI's deal with Gearhart-Owen was that if it could sell Rector it could keep anything above Gearhart-Owen's set price. There was evidence in the record from which a trier of facts could reasonably infer that the agreement between Thywissen and FTI contemplated the sale of real estate or securities. It was clearly FTI's burden to secure findings that such agreement did not contemplate the sale or purchase of real estate or securities.

■ Thywissen did not object to the court's failure to submit an issue with respect to whether the agreement contemplated the sale of real estate and since such fact was not established as a matter of law the issue must be deemed found in support of the trial court's judgment. Rule 279, Texas Rules of Civil Procedure; Rogers v. Ellsworth, 501 S.W.2d 756 (Tex.Civ.App. —Houston [14th] 1973, writ ref'd n. r. e.).

■ However Thywissen did object to the court's failure to submit an issue inquiring whether FTI's claim was for recovery of commissions for services rendered in connection with the sale of securities and further objected that FTI's recovery was precluded by its failure to prove

that it was a licensed broker or dealer in securities. FTI argues that Thywissen's objections were insufficient in that they referred to rendition of services "in connection with" the sale of securities rather than to services rendered "in the sale of securities" in the specific language of Article 581–34. We hold that Thywissen's objection appropriately called the matter to the trial court's attention and that the error of omission of such issue was preserved by such objection. McDonald, Texas Civil Practice, 1970 rev., Vol. 3, § 12.-32.2, pp. 420–421.

FTI further contends that it was a "finder" as distinguished from a dealer or broker in securities and that its services come within the exception to the Securities Act. We recognize, as did the court in Rogers v. Ellsworth, that the courts of some states, such as California, have recognized a distinction between finders and real estate brokers, defining a finder as an intermediary who contracts to find and bring parties together but leaves the negotiation of the ultimate transaction to the principals. However we are not prepared to say, as the language of the Rogers case might suggest, that a party may circumvent the requirements of the Real Estate Dealers Licensing Act and the Texas Securities Act merely by showing that his services were to be limited to the procurement of the agreement of the principals. Breeding v. Anderson, 152 Tex. 92, 254 S.W.2d 377 (1953); Manering v. North Texas Producers Association, 370 S.W.2d 939 (Tex.Civ. App.—Fort Worth 1963, writ ref'd n. r. e..); Fry v. Shaw, 508 S.W.2d 142 (Tex. Civ.App.—Dallas 1974, writ ref'd n. r. e.). In the Fry case, the court through Chief Justice Williams, stated at page 146:

"Finally, we agree with appellant Fry that the record in this case reveals that Shaw's role in the transaction was that of a broker, dealer or commission agent and since he was not licensed as a broker, dealer or agent, as required by the Texas Securities Act, he cannot recover a commission for his services. Article 581–34 of the Texas Securities Act, Vernon's Ann.Civ.St. plainly and expressly provides that no person shall bring or maintain any action in the courts of this state for collection of a commission or compensation for services rendered in the sale or purchase of securities without alleging and proving that such person was duly licensed under the provisions of the law. Under the record as here presented Shaw's only cause of action would be for his compensation for services rendered by him and arranging the meeting between Fry and Fraser which resulted in the purchase of the securities by Fry. Pursuant to the plain letter of the statute Shaw cannot recover a commission or compensation since he admittedly was not licensed."

■ As previously stated, it was FTI's burden to obtain an appropriate finding that its alleged agreement with Thywissen was exempt from the provisions of Article 581–34. There was evidence raising the issue not only of whether the agreement contemplated the sale of securities but also of whether the services to be rendered by FTI's representatives extended beyond that of merely finding and introducing Thywissen to an investment opportunity. In the absence of favorable finding on such issues, FTI failed to meet its burden of establishing its exemption from the provisions of Article 581–34, even under the rationale of those courts recognizing a distinction between finders and stock brokers. Zappas v. King Williams Press, Inc., 10 Cal.App.3d 768, 89 Cal.Rptr. 307 (1970). As distinguished from the situation in Hall, the trial court was not authorized to make fact findings on these omitted issues since appropriate objections were leveled at their omission from the court's charge. McDonald, Texas Civil Practice (1970 rev.), Vol. 3, § 12.36.3, p. 435.

■ In view of our holding that FTI is precluded from maintaining an action on the basis of its alleged contractual agreement with Thywissen, we further hold that

it is precluded from recovery on the theory of quantum meruit. Sherman v. Bruton, 497 S.W.2d 316 (Tex.Civ.App.—Dallas 1973, no writ). We sustain Thywissen's points of error 1 through 5. In view of this determination it is unnecessary that we consider Thywissen's sixth point asserting that the form of the first special issue erroneously assumes a disputed fact and constitutes a prejudicial comment on the weight of the evidence.

The trial court's judgment is reversed and judgment rendered that appellee, FTI Corporation, take nothing by its action. Rule 434, T.R.C.P.